Edward T. Weber, Esq., #194963
Kristi M. Wells, Esq. #276865
**LAW OFFICES OF EDWARD T. WEBER**
17151 Newhope Street, Suite 203
Fountain Valley, California 92708
Telephone: 657-235-8359
Facsimile: 714-459-7853
Email: ed@eweberlegal.com
Email: kristi@eweberlegal.com

Attorneys for Defendants
RUSHMYFILE, INC.; SUPERIOR LOAN SERVICING;
ASSET DEFAULT MANAGEMENT, INC.; MARK CAPALONGAN; SANDRA
CAPALONGAN; JIMMY HUI; JING FENG; HOU SANG WONG; GILBERT CHOY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| JOANNE L. STRICKLAND,<br><br>                    Plaintiff,<br><br>  -vs-<br><br>RUSHMYFILE, INC, a business entity;<br>BAYSIDE MORTGAGE AND REAL<br>ESTATE SERVICES, INC., a business entity;<br>JEREMY CIPOLLONE, in his capacity as<br>owner and sole officer of Bayside Mortgage<br>and Real Estate Services, Inc.; SUPERIOR<br>LOAN SERVICING, a business entity;<br>ASSET DEFAULT MANAGEMENT, INC., a<br>business entity; MARK CAPALONGAN ,an<br>individul; SANDRA CAPALONGAN, an<br>individual; JIMMY HUI an individual; JING<br>FENG, an individual; HOU SANG WONG, an<br>individual; GILBERT CHOY, an individual;<br>and DOES 1-20;<br><br>                    Defendants.<br>_____ | Case No.: 4:21-cv-08135- JST<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT 12(b)(6) OF PLAINTIFF ; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JIMMY HUI IN SUPPORT THEREOF**<br><br>Date:  December 9, 2021<br>Time: 2:00 p.m.<br>Place: Oakland Courthouse,<br>Courtroom 6 – 2nd Floor<br>1301 Clay Street, Oakland, CA 94612 |

TO: THE HONORABLE JON S. TIGAR, UNITED STATES DISTRICT JUDGE, PLAINTIFF, AND ALL OTHER INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT Defendants RUSHMYFILE, INC.; SUPERIOR LOAN SERVICING; ASSET DEFAULT MANAGEMENT, INC.; MARK CAPALONGAN; SANDRA CAPALONGAN; JIMMY HUI; JING FENG; HOU SANG WONG; GILBERT CHOY, ("Defendants", "Movants") hereby submit their Notice of Motion and Motion and Motion to Dismiss ("Motion") Complaint ("Complaint") filed by Plaintiff in this action. The Complaint was filed on October 18, 2021.

The Motion is based upon the allegations contained in the Motion, the inclusive Points and Authorities in support of the Motion, contents of the Complaint, and such other facts and arguments that may be presented at the hearing on the Motion or as otherwise may be appropriate.

NOTICE IS FURTHER GIVEN that the Motion shall be heard on December 9, 2021, at 2:00 p.m. in Courtroom Oakland Courthouse, located at Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612

Dated:  <u>October 26, 2021</u>                    LAW OFFICES OF EDWARD T. WEBER

By: _____
KRISTI M. WELLS, ESQ.
Counsel for Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION AND FACTS

On July 21, 2017, Plaintiff JOANNE STRICKLAND (hereinafter "Plaintiff") executed a Note and Deed of Trust in the amount of $480,000.00, which placed a first lien on the real property commonly known as 2192 1st Avenue, Napa, California 94558 (hereinafter "the Property").  The loan was a hard money loan, *premised upon it being a non-owner occupied, business purpose loan* which was based exclusively on those facts as well as the loan to value of the Property. The Property was to be a <u>non-owner occupied, business purpose loan</u> as expressly represented in each and every loan document including the documents prepared and signed by Plaintiff and on her behalf, to obtain the loan, as well as the Note and Deed of Trust; and as expressly acknowledged in the Complaint. The lenders on the loan are Defendants MARK CAPALONGAN, SANDRA CAPALONGAN, JIMMU HUI, JING FENG, HOU SANG WONG, GILBERT CHOY (hereinafter "Lender Defendants"). The loan was serviced by Defendant LIL'WAVE FINANCIAL, INC. dba SUPERIOR LOAN SERVICING (hereinafter "Servicer Defendant"). The broker for the Lender Defendants was Rushmyfile, Inc. (hereinafter "RMF"). In order to obtain the loan, Plaintiff retained and communicated exclusively with her broker, BAYSIDE MORTGAGE AND REAL ESTATE SERVICES, INC. (hereinafter "Bayside") to represent her. The broker of record from Bayside is Jeremy Cippilone (hereinafter "CIPPILONE") who exclusively communicated with RMF by submitting Plaintiff's loan application, lease agreement that purportedly existed between Plaintiff and a third party, an occupancy letter that Plaintiff and CIPPILONE represented was written and signed by Plaintiff, and various other signed loan documents, many under penalty of perjury, that demonstrated and repeatedly attested to Plaintiff's eligibility for this business-purpose loan.

Plaintiff, an advanced graduate in computer programming and longtime professor at *numerous* college institutions, teaching computer engineering, claims that she attempted to make a payment through the Servicer Defendant's online portal and *somehow* the program software malfunctioned, as to her loans an no other borrowers, and caused her to place a double payment which subsequently caused her to overdraft. While this was exhaustively stated in her

MOTION TO DISMISS COMPLAINT

3

prior litigation regarding this loan, it is notably absent here. Plaintiff admits that she was able to get all of the money back that she unintentionally "overpaid". Plaintiff has apparently abandoned this strategy and adopted a new set of facts. Despite the same, Plaintiff stopped making payments on the loan altogether and has used this "portal issue" as a catalyst to stop making payments on all of her properties and file a series of bankruptcies, vying for a loan modification.

When Plaintiff made the loan, she told RMF and the Lender Defendants, and all involved, that she was _not_ living at the Property, that she was not going to live at the Property and that it was not to be used as her primary residence at any time, nor was it to be used for any personal use _and_ that it was rented to a third-party for $3,100.00 per month. Plaintiff admits all of the same in her complaint, despite having previously feigned ignorance.  The Note she signed clearly stated on its face "**1-4 RESIDENTIAL NON-OWNER-OCCUPIED PROPERTY, BUSINESS PURPOSE LOAN**".  This expressly excepts the loan from the allegations in the complaint referring to the Truth in Lending Act (hereinafter "TILA"), which are laws protecting residential purchases, _not business loans_. These causes of action misrepresent the loan type, the documents to the loan and the representations made by Plaintiff, now, which completely contradict the representations that were made to obtain the loan. Plaintiff has provided no facts as to how this loan is subject to TILA, in fact, she admits throughout the complaint, and is supported by a litany of loan documents, that is was a non-owner occupied, _business purpose loan_.

Ultimately, Plaintiff had a grand scheme to use the Property for her "business", an entertainment business, but as admitted throughout her deposition testimony, that never came to be; again these ancillary facts were one pronounced features in her prior attempts at litigation but are completely absent here. In fact, in her deposition testimony in her prior litigation, Plaintiff admitted that the entire time that the loan has been in being, her husband has been living in the Property, _rent free_, making no financial contributions whatsoever for the loan or

MOTION TO DISMISS COMPLAINT
4

maintenance of the Property and that despite her repeated representations in the loan documents, the Property was never used for a business purpose, it was never rented to a third-party tenant, that she never received $3,100.00 in rent from that third party, and it was always used for personal use- to house herself, her husband and children who lived there exclusively.

Plaintiff took this loan, brokered on her behalf by Bayside and CIPPILONE who also assisted in preparing and completing the loan documents, and became delinquent on the loan but to this day has remained in the Property. As it happened, Plaintiff was over-leveraged but desperate to make a "studio" where she could house various "actors" in her company, as well as use as a "prop" for her company for which she had allegedly written a screenplay that never went into production. Plaintiff claims a series of unfortunate events that led to her financial ruin, all of which was done by her own acts and various other nefarious individuals she came across, and none of those had to do with Lender Defendants, RMF, Superior or ADM.  In order to obtain this loan, Plaintiff, who was and is a bad credit risk, together with her Bayside and CIPPILONE, turned to hard money loans in order to purchase various properties, including the Property that is the subject of this litigation. In deciding to fund the loan, lender defendants relief upon various loan documents, signed by Plaintiff, attesting to the fact that the loan was for a business purpose and was a non-owner-occupied/ tenant occupied property, including:

- Affidavit Regarding Loan Purpose
- Certificate of Business Purpose
- Loan Purpose and Real Property Security Declaration
- Promissory Note and Deed of Trust
- Nunez Lease
- Occupancy Letter
- Uniform Residential Loan Application
- Loan Submission to FMC Lending (or RMF)
- Residential Appraisal Report (Hui Decl. ¶4, Exhibits 1-9, respectively)

MOTION TO DISMISS COMPLAINT
5

Plaintiff executed these documents in order to induce the Lender Defendants into funding the subject loan, after Plaintiff repeatedly stated that she did not live at the Property, that it was rented to a third-party, that she received $3,100.00 in rent from a third-party and that she would not use the Property for any personal or household use and that it would be expressly used for either business, commercial or investment purposes; see attached Affidavit Regarding Loan Purpose. Plaintiff also furnished an Appraisal Report, through her broker, Bayside, stating on the second page that the property was Tenant occupied. <u>None of that was true when Plaintiff signed these loan documents or anytime thereafter.</u> Plaintiff and Bayside even went so far as to provide Lender Defendants with a lease agreement for the Property, purportedly signed by Plaintiff and third parties. This lease was fabricated for the purpose of establishing that Plaintiff was eligible for the subject loan and to entice and induce the Lender Defendants into funding the loan, and RMF into brokering the loan on their behalf. Not only that but Lender Defendants and RMF were also presented with an "Occupancy Letter", stating that she did not live at the Property, when she not only did but her husband also lived there as did her children and still do to this day. Plaintiff testified in her deposition, when presented with the lease agreement, that she had never seen this document but that it must have been the creation of Bayside. Bayside, in the deposition of owner CIPPILONE, stated that Plaintiff knew of this document.

Plaintiff blames everyone else for the state of this loan and this transaction despite the fact that it was initiated, coordinated and manipulated entirely by herself and her broker, Bayside and CIPPILONE; including the representation of the status of the Property and its use. Nonetheless, Plaintiff has done nothing more than exacerbate the situation by filing a series of bankruptcies, alternating between filing herself and through her company, Clean! The Series, litigating a case in *both* Napa County Superior Court and Solano County Superior Court for several years only to have the Solano County case dismissed on the *brink* of trial and then *voluntarily dismissing* the Napa County case involving the Property that is the subject of this case, at the Mandatory Settlement Conference, *just* prior to trial, costing Lender Defendants

significantly by way of legal fees, opportunity loss by loss of the money and income that the loan was to have generated as well as an enormous tax on the resources and time of the court systems in both Counties, with no intention and no basis for pursing this litigation- the same exists here.

Bayside and CIPPILONE were complicit in the scheme to obtain the broker fees under the false pretense that Plaintiff did not live at the Property, that it was not used for personal or household use, that it was rented by a third-party for $3,100.00 and that there was an actual lease in place—*all of which was a lie*, to which Plaintiff benefitted by way of the loan proceeds and Bayside by way of broker commissions. There are no facts and no allegations that any of these moving defendants had any information or knowledge that Plaintiff actually used the proceeds of the loan for personal or consumer purposes prior to the initiation of litigation.

Plaintiff's position is unclear. Plaintiff admits that she signed a multitude of loan documents, under penalty of perjury, knowing they would be relied upon by the Lender Defendants and RMF when they agreed to fund the loan. Plaintiff also admits that the facts she represented in those loan documents were not true- the Property was never rented to a third party, the lease was a sham,- entirely made up presumably to assure the Lender Defendants and RMF, under false pretense, that the Property was not owner occupied. The "Occupancy Letter" was also a sham, created also under false pretense with the intent to deceive the Lender Defendants and RMF by supporting all of the other loan documents and the blatant requirement that the Property be used only for a business purpose and not be owner occupied or for personal or household purposes. Nonetheless, the proceeds from the loan were used to fund Plaintiff's personal uses which allowed her husband and children to live at the Property, rent free and without contribution to the loan. The loan was procured by overwhelming, blatant deceit of which Plaintiff now does not deny, nor can she based on the loan documents, status of the loan, her deposition testimony and distribution of the loan proceeds. Despite the same, Plaintiff brings causes of action only applicable only to owner-occupied properties, consumer purpose loans.

MOTION TO DISMISS COMPLAINT

Plaintiff is both attempting to claim that she does not live at the Property throughout each loan document and in documents in support thereof to so that she was eligible for the loan, and now claim that she has always lived there and is entitled to "protections" afforded only to those related to a consumer purpose, not business- purpose. Plaintiff cannot cherry-pick the intentions of this loan. Plaintiff already made abundantly clear that she knowingly took a business-purpose loan because she "wanted to fix up the Property, have her family move out, and start renting out her long-time Home to tenants." Despite the same, this has been Plaintiff's action all along- claiming facts not aligned with the truth so that she could take our numerous loans to fund her failed production studio, not paying on any of those loans leaving numerous lenders unpaid for many years, keeping her husband and kids in the Property all the while; this is unclean hands at best but it is fraud no less. Under no circumstances does it plead a cause of action against these moving defendants.

Plaintiff also alleges liability by the Servicing Defendant, claiming that she had attempted to refinance out of the subject loan but that the Servicing Defendant interfered with her efforts; despite the fact that Plaintiff has not provided a single example or shred of evidence or contract or agreement to support her theory that a lender that attempted to complete a refinance with her but failed to do so because of any action of the Servicing Defendant. Despite repeated requests in discovery, no such proof has been provided or established. What has become apparent is that Plaintiff took out the subject loans, overburdened herself financially, attempted to refinance but was unable and now, out of desperation, has attempted to attack the very lenders and broker she deceived by false, unsubstantiated claims. Plaintiff has been involved with hard money lenders, she is familiar with real estate, she knew all along who lived at the Property and what her intentions were with the Property, she accepted the loan proceeds, she made a payment and never once tried to cancel the loan. Now, Plaintiff's husband and children have been living rent free at the Property for *years* while she strings the Lender

1
2
Defendants and each of these moving defendants she defrauded through two civil litigations and multiple bankruptcies.

3
4
5
6
7
8
9
10
11
These moving defendants have repeatedly succeeded in having each prior litigation dismissed and obtained relief in each prior bankruptcy case because Plaintiff has yet to convince a court that any of these causes of action are viable. Apparently left with one last forum, we find ourselves here again; same dilemma each time for Plaintiff- she cannot escape that she signed a volume of loan documents stating that she did not live at the property, would not live at the property, that a third party tenant lived at the property and paid her rent, that the loan proceeds would not be used for personal, consumer or family purposes and now she flips completely and claims she's entitled to the protections of TILA which is only applicable to a borrower's principal dwelling, yet Plaintiff states in her Complaint that she did not live at the Property thus taking herself and this loan out of TILA territory.

12
## II.     LEGAL STANDARD FOR MOTION TO DISMISS

13
14
15
16
17
18
Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the district court must dismiss the complaint for "lack of subject matter jurisdiction." When a Plaintiff lacks standing under the Article III "case or controversy" requirement, federal courts lack subject matter jurisdiction over the suit, and the case must be dismissed. *Cetacean Community v. Bush,* 386 F. 3d 1169, 1174 (9th Cir.2004). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

19
20
21
22
23
24
And, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court properly dismisses a complaint for failure to state a claim upon which relief may be granted if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240. 1242 (9th Cir.2011) (citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly* , 550 U.S. 544, 57 (2007). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference' that the defendant may be liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) citing *Twombly,* 550 U.S. at 556.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). However, courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* The ultimate determination of "whether a complaint states a plausible claim for relief will… be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A court should disregard speculation and a court is not required to accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See *Bell Atlantic Corp. v. Twombly* , 5505 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.") See *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). And, as the Ninth Circuit explained:

> [W]e begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. We disregard thread bare recitals of the elements of a cause of action, supported by mere conclusory statements. After eliminating such unsupported legal conclusions, we identify well-pleaded factual allegations, which we assume to be true, then determine whether they plausibly give rise to an entitlement to relief. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; this is, plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). 'The make-or-break standard… is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepulveda-Villarini v. Dep't of Educ. Of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Also, while a 12(b)(6) motion is decided on the pleadings, courts may properly

consider "official public records[,] documents central to plaintiffs claim[, and] documents sufficiently referred to in the complaint." *E.g. Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *Mack v. South Bay Deer Dist., Inc.* 798 F.2d 1279, 1282 (9th Cir. 1986). *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir.1982); *Haskell v. Time, Inc.,* 857 F. Supp. 1392, 1397 (E.D. Cal. 1994).

## III.   ARGUMENT

A.   <u>The Complaint Fails to State a Claim Upon Which Relief May Be Granted Because Each Cause of Action in Plaintiff's Complaint is Predicated Upon TILA, Regulation Z Which is Not Applicable to the Subject Loan.</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ascroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief'" Id. (quoting Twombly, 550 U.S. at 557).

"For the purposes of a motion to dismiss, the Court must treat all factual allegations in the complaint as true, although the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." Twombly, 550 U.S. at 545 (internal quotations omitted). In this case, the Complaint is devoid of any specificity.

There is no plausible claim here, as alleged, either factually or legally.  The complaint wholly fails to meet the heightened standard under Twombly, Supra, and Ashcroft, Supra.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

In the instant case, Plaintiff does not dispute signing the loan documents, nor does she dispute accepting the loan proceeds on the subject loans from Lender Defendants, nor does she dispute that she became delinquent on the loan. Each cause of action contained in Plaintiff's complaint relates to alleged violations of TILA, Regulation Z. *See* 12 § 1026. Regulation Z focuses on protecting consumers who take out high-cost mortgages, which it defines as "any consumer credit transaction that is secured by the consumer's principal dwelling." *See* 12 C.F.R. § 1026.32. Among other things, Regulation Z requires lenders to provide consumers with special disclosures for high-cost mortgages; proscribes certain practices that make it harder for consumers to pay high-cost mortgages; and prohibits lenders from structing a high-cost mortgage to evade structures of Regulation Z. *See* 12 C.F.R. §§ 1026.32 – 1026.36.

Plaintiff's first three causes of action include (1) Violations of Truth in Lending Act and 12 C.F.R. § 1026.32(c)-(d), (2) Violations of Truth in Lending Act and 12 C.F.R. § 1026..34, and (c) Violations of Truth in Lending Act and 12 C.F.R. § 1026.36, as against all Defendants.

Plaintiff's fourth cause of action is for wrongful foreclosure and is against the Lender Defendants and Superior. To prove this cause of action, Plaintiff must establish that (1) the foreclosure is "illegal, fraudulent, or willfully oppressive," (2) the foreclosure is "entirely unauthorized on the facts of the case," (3) she either "tendered the amount of the secured indebtedness or was excused from tendering," and (4) she suffered harm. *Majid v. Bank of Am., N.A.*, 243 Cal.App. 4th 1293, 1307 (2015), *as modified* (Jan. 14, 2016). Plaaintiff alleges that the foreclosure here is illegal because it violates Regulation Z; thus, each of Plaintiff's causes of action depend on a showing a violation of Regulation Z.

The fifth and sixth causes of action, both against the Lender Defendants and Superior are for Declaratory Relief and Cancellation of Instruments, respectively. Each of these also are directly correlated to Plaintiff's TILA/ Regulation Z allegations. As the court previously acknowledged, these causes of action are also remedies rather than substantive claims.

As such, each cause of action in Plaintiff's complaint is predicated upon a claimed violation of Regulation Z. However, Regulation Z does not apply to business-purpose loans- this is, loans "primarily for a business, commercial or agricultural purpose." *Johnson v. Wells Fargo*

MOTION TO DISMISS COMPLAINT

12

*Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir. 2011). Plaintiff admits in her complaint that she sought to refinance her mortgage because she "wanted to fix up the Property, have her family move out, and start renting out her long-time home to tenants". For that reason, Plaintiff agreed to seek a business-purpose loan and signed application forms under penalty of perjury "stating that the requested funds were intended for an investment purpose." *Id.* ¶¶ 21, 28.

Additionally, a high-cost mortgage is a loan secure by a borrower's "principal dwelling." 12 C.F.R. § 1026.32. However, Plaintiff's complaint acknowledges that she had moved out of the subject property before securing her loan, and was living elsewhere, so it could not have been her "principal dwelling." Moreover, the loan documents, signed and acknowledged by Plaintiff, state that she lived at 101 Muller Street, Vallejo, California 94590, as evidenced in the attached exhibits.

Additionally, Lender Defendants do not fund owner-occupied, consumer loans. Lender Defendants would not have funded this loan had they known the truth, that Plaintiff used and intended to use the loan proceeds for anything other than a business purpose (Hui Decl. 5). Lender Defendants are not and never have been associated with, either as agent or principal, CIPPILONE or Bayside and no knowledge of either CIPPILONE or Bayside can be imputed on these Moving Defendants. Plaintiff provides no facts, only bare conclusory statements, that Lender Defendants or RMF knew or should have known that Plaintiff was going to have her family continue to live at the subject property and that she did not intend on using the loan proceeds for a business purpose. If that were the case, why did Plaintiff provide the Occupancy Letter, the Lease Agreement and numerous signed documents to the contrary? In fact, these Moving Defendants did not know that Plaintiff's family would continue to live in the subject property or that the loan proceeds would be used for non-business purposes (Hui Decl. ¶ 6). Had these Moving Defendants known that Plaintiff intended to use the property and the loan proceeds for family and household purposes, they would not have funded or brokered the loan (Hui Decl. ¶ 7).

MOTION TO DISMISS COMPLAINT

13

1    In light of these concessions, repeated not only in the complaint but throughout each of

2 the loan documents, her deposition testimony and discovery responses provided in prior

3 litigation, taken under oath, each cause of action in Plaintiff's complaint fails as a matter of law.

   B.   <u>The Court Should Not Grant Leave to Amend the Complaint as it Would be Futile</u>
4       <u>Given the Existing Allegations.</u>

5    While disfavored, dismissal without leave to amend a complaint is appropriate if

6 amendment would be futile. See *Eminece Capital, LLC v. Aspeon, Inc.* 316 F.3d 1048, 1051

7 (9th Cir. 2003); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F. 1393, 1401 (9th Cir.

8 1986). Here, Plaintiff's complete failure to satisfy each of the necessary elements of TILA/
Regualtion Z shows that amendment would be futile.

9                             **IV.    CONCLUSION**

10   Plaintiff's complaint has no merit.  Defendants deny they caused any injury to Plaintiff.

11 Regardless, the complaint on its face is frivolous and does not state a viable claim against these

12 moving Defendants.  The Complaint should be dismissed, with prejudice since it cannot be
amended to state any claim.

13   WHEREFORE, these moving Defendants respectfully request the following:

14   1. That this Motion be granted;

15   2. That each claim for relief be dismissed without leave to amend;

16   3. For reasonable attorney's fees and costs; and

17   4. For such other relief as the Court deems just and proper.

18
19                             LAW OFFICES OF EDWARD T. WEBER

20 Dated:  October 26, 2021          By: _____
                                         Kristi M. Wells, Esq.
21                                       Attorneys for Movants/Defendants

22

23

24

                        MOTION TO DISMISS COMPLAINT
                                     14

## <u>CERTIFICATE OF SERVICE</u>

I, Crystal Dalton, declare and state as follows:

I am over the age of eighteen years, employed in the County of Orange, State of

California, and not a party to the within action. My business address is: 17151 Newhope Street,

Suite 203, Fountain Valley, CA 92708.

On October 27, 2021, I served the within: **NOTICE OF MOTION AND MOTION TO**

**DISMISS COMPLAINT 12(b)(6) OF PLAINTIFF; MEMORANDUM OF POINT AND**

**AUTHORITIES; DECLARATION OF JIMMY HUI IN SUPPORT THEREOF** on the

parties in said action by placing a true copy thereof enclosed in a sealed envelope addressed as

follows:

**Jason W. Estavillo**
Law Office of Jason W. Estavillo
1330 Broadway, Suite 933
Oakland, CA 94601
jestavillo@estavillolaw.com

**By EMAIL:** I caused each such document to be transmitted electronically to the parties at the

email address as indicated.  To the best of my knowledge, the transmission was reported as

complete and no error was reported that the electronic transmission was not completed.

I declare under penalty of perjury under the laws of the State of California and the United

States of America that the foregoing is true and correct.

Dated: October 27, 2021                                    _____

                                                                            CRYSTAL DALTON